UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT D. MCPHAIL,

        Petitioner,         Case Number: 01-10190-BC
                                        Honorable David M. Lawson

v.

PAUL RENICO,

        Respondent.
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

      The petitioner, Robert D. McPhail, a state inmate currently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is incarcerated in violation of his constitutional rights. He challenges his prison sentence of twenty to forty years for conspiracy to commit armed robbery, Mich. Comp. Laws § 750.529. He contends that the trial court relied upon impermissible factors in determining his sentence, that the sentence was disproportionate, and that it was based upon incorrectly scored sentencing guidelines. The Court finds that the petitioner has not shown that the trial court relied upon materially false information in sentencing the petitioner or that the sentence, which was within the statutory maximum, constituted cruel and unusual punishment. In addition, the Court finds that the petitioner's claim regarding calculation of the sentencing guidelines is a state law issue for which federal habeas relief is not available. The Court, therefore, will deny the petition.

I.

The petitioner's conviction arises from his plea of guilty to conspiracy to commit armed robbery. The guilty plea was entered on May 14, 1998 in Tuscola County, Michigan Circuit Court pursuant to a plea agreement whereby the prosecutor dismissed charges of conspiracy to commit first-degree premeditated murder, conspiracy to commit first-degree home invasion, and attempted first-degree home invasion, and agreed not prosecute the petitioner as a habitual offender. On May 27, 1998, the petitioner was sentenced to a prison term of twenty to forty years.

The petitioner filed a delayed application for leave to appeal and a supplemental brief in the Michigan Court of Appeals, which presented the following claims:

I. The trial judge's [] sentence of 20 to 40 years incarceration was an abuse of discretion since the trial judge's departure from the sentencing guidelines violated the "principle of proportionality" for the offense of conspiracy contrary to the federal and state constitutions, U.S.C.A., Amend. VI, V, VI, XIV; Mich. Const. Art. 1, Sec. 17, 20.

II. Since the trial judge sentenced Mr. McPhail to a disproportionate sentence based on improperly scored and applied sentencing guidelines, this court must remand Mr. McPhail for a resentencing since he was sentenced based on inaccurate information.

III. Defendant was denied due process by the sentencing judge's reliance on his memory of the guilty plea proceedings in the cases of the codefendants in order to score the guidelines and fashion a sentence. U.S. Const. Am. XIV; Mich. Const. 1963, Art. 1 § 17.

IV. Defendant must be resentenced where the trial court "diagnosed" Mr. McPhail as a "social psychopath" likely to kill someone, without any kind of psychological report or other basis for this medical conclusion, and sentenced him accordingly.

V. Defendant must be resentenced where the judge considered him guilty of a conspiracy to assault with intent to murder charge which had been dismissed.

The Michigan Court of Appeals denied the delayed application for leave to appeal "for lack of merit in the ground presented." *People v. McPhail*, No. 219738 (Mich. Ct. App. Jan. 31, 2000). The petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. McPhail*, No. 116529 (Mich. Aug. 22, 2000).

Thereafter, the petitioner filed the pending petition for a writ of habeas corpus, presenting the same claims that he presented in state court.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

-4-

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

However, because the state appellate courts in this case issued one-sentence form orders denying the petitioner's appeals, this Court has no reasoned decision or explanation from the state courts for rejecting the petitioner's claims. Where a state court declines to address the merits of a properly raised issue, this Court conducts an independent review of the issue; the deferential standard of review prescribed by the AEDPA cannot be applied, since "[t]his statute by its own terms is applicable only to habeas claims that were adjudicated on the merits in State court. . . . Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition . . . questions of law and mixed questions of law and fact [are reviewed] *de novo*." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (internal quotes and citations omitted); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (holding that where "no state court has adjudicated the merits of Clinkscale's ineffective assistance claim . . . the deferential standard of

review set forth in section 2254(d) is inapplicable"); *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005).

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

A.

The petitioner claims that he is entitled to habeas corpus relief because the trial court committed several errors in sentencing the petitioner. The petitioner argues that (1) the state court judge improperly considered him guilty of a conspiracy to assault with intent to murder, when that charge had been dismissed pursuant to the plea agreement; (2) the sentencing judge improperly relied on his memory of the guilty plea proceedings of the petitioner's co-defendants in sentencing the petitioner; and (3) the trial judge erred in characterizing the petitioner as a "social psychopath" who was likely to kill, without any medical basis for that characterization.

At the sentencing proceeding, the trial court explained that the scoring of the sentencing guidelines resulted in a sentence range of 36 to 96 months for the minimum term. The court proceeded to sentence the petitioner, explaining:

> The Court also in sentencing the defendant takes into consideration not only this presentence investigative report and recommendation, because I would be remiss in not pointing out that certainly each defendant that has appeared before the Court has a different version of their perception of the origin, the idea, whose idea it was to commit this offense.
>
> And it's also interesting that I get three different versions from each respective defendant as to what their understanding was going to be concerning the robbery of the elderly victim, in this case Mr. Bartle.
>
> The question that I pondered since this case first came to Court is who is primarily responsible for this attempted criminal act.

And fortunately for Mr. Bartle, this act was not completed. Fortunately for Mr. Bartle someone who was closely related to the individual that is directly before the Court at this time, blew the whistle on this defendant, Mr. McPhail, in Cass City, a cofidential [sic] informant, and notified the authorities of the planned armed robbery.

And, there is no doubt in my mind after reading the presentence reports concerning the other two defendants, and taking the pleas of guilty in the other two cases, and reflecting on how this case went down, that the defendant who is before the Court is the ring leader, the individual who is totally responsible for encouraging the commission of this offense, contemplating, and planning, and scheming, and deciding how it was going to be done, and I am convinced in planting the idea into this juvenile, and using him as a dupe in planning to further his goals and objectives.

There is no question in my mind that Mr. Robert Dean McPhail is totally responsible for, and just looking at it logically he is the oldest of the pack, he's 20 years old, the other two defendants, one was 15, the other one was 17.

Not only that, the chronology of the way things happened. Mr. McBride was not brought on board in this criminal enterprise until well after its planned execution by Mr. McPhail and the other defendant, co-defendant Mr. Lesoske, who had been there.

Long range plan was to commit this armed robbery, steal the money from Mr. Bartle, and then go to Wisconsin.

So I'm satisfied then that of the three individuals that were involved, that Mr. McPhail is the most culpable.

And from what I can see here, there's no question in my mind but for the intervention of the confidential informant, and notification of the police, that Mr. Bartle would not be alive today. That Mr. McPhail would have been certain to make sure that that individual was dead.

What I find also particularly egregious in this case is that Mr. McPhail has never done anything as far as I can tell to improve his lot.

He was on probation at the time of the execution and planning of this criminal offense. He having similar offenses resulting in his felony conviction in terms of probation.

He has been assaultive in middle school, exhibited assaultive conduct in high school, and quite frankly, I don't think there is any point at all in talking in terms of any form of rehabilitation as it would relate to Mr. McPhail.

> The guidelines in no way adequately assess the nature of the psychopathic personality that is before the Court. I believe that Mr. McPhail is a social psychopath.
>
> I believe that some day that he will murder or kill some individual simply to further his own economical interests in stealing property and committing armed robberies.
>
> When I see a person like that bloosoming [sic] in his early 20s, as far as I'm concerned, the only thing I can do is protect the citizens of the State of Michigan.
>
> Right now the sentence that I'm supposed to impose is supposed to be – it's supposed to fit the crime according to the most recent Michigan Supreme Court case *LaPoint*.
>
> Prior to that time the Court was to take into consideration a number of factors, rehabilitation, retribution, and past criminal record of the individual.
>
> Mr. McPhail has had an opportunity to turn his life around in the period of time he was placed on probation, until the time that he was discharged from the county jail.
>
> He had an opportunity to go forward in our community, in our society, and do well. It took, in fact I don't think he was out of jail for more than one year and he's involved in this criminal enterprise.
>
> So, once again I think the only appropriate disposition with an individual like Mr. McPhail is the [sic] warehouse him for as long as I possibly can within the parameters of the law of the state.
>
> It's the sentence and judgment of the Court, I set the maximum of 40 years, minimum of 20 years, giving you credit for 114 days that you've served.

Sentencing Tr. at 8-12.

In sentencing, "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). A fundamental principle of sentencing holds that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Grayson*, 438 U.S. 41, 50 (1978) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). The Supreme

Court, however, has held that a sentence imposed on the basis of "misinformation of constitutional magnitude" violates due process. *Tucker*, 404 U.S. at 447.

First, the petitioner claims that the trial court erred in sentencing the petitioner because the trial court considered the assault with intent to murder charge, which had been dismissed pursuant to the plea agreement. The sentencing court's consideration of factors other than the crime for which a defendant is being sentenced, including evidence of crimes for which the defendant was not tried, does not amount to a constitutional violation. *See Collins v. Buchkoe,* 493 F.2d 343, 345 (6th Cir. 1974). The petitioner's pre-sentence investigation report indicated that part of the plan for the robbery involved killing the victim, and the petitioner did not object to this part of the pre-sentence report at sentencing. The report reads: "McPhail was interviewed and concurred with Lesoski's statement and added that they planned to hog tie the victim[,] and McBride would put some alcohol on a rag and try to suffocate Bartle. If Bartle didn't suffocate to death McBride was going to stab him to death." Delayed App. for Lv. to Appeal to the Mich. S. Ct., App. B. The petitioner did not contend in the state court , nor does he argue here, that this description of the perpetrators' intentions is false. Because the petitioner has not shown that the sentencing court relied on materially false information, the petitioner has not established a constitutional violation.

Second, the petitioner claims that the trial court erred in considering information obtained in connection with the proceedings of his co-defendants when fashioning the petitioner's sentence. On the basis of these proceedings, the trial court concluded that the petitioner was the mastermind behind the robbery plan. The petitioner claims that he did not have adequate notice that the trial court would rely upon this information. *See Gardner v. Florida*, 430 U.S. 349 (1977) (finding a violation of due process where the petitioner received a death sentence based in part on confidential

information in a pre-sentence report, which he had "no opportunity to deny or explain"). However, based upon the pre-sentence information report, the petitioner was placed on notice that the trial court would base its sentence, *inter alia*, upon the nature of the crime to which the petitioner pleaded guilty and the trial court's assessment of a number of factors, including the petitioner's culpability. The petitioner relies on *United States v. Hayes*, 171 F.3d 389, 392 (1999), in which the Sixth Circuit invoked the Due Process Clause in its analysis of Federal Rule of Criminal Procedure 32, which requires disclosure of most of the information that is to be relied upon at sentencing. However, the Sixth Circuit's analysis of this issue focused entirely on the rule; the court did not apply a due process analysis to the issue. Furthermore, the Supreme Court has not applied the holding of *Gardner* to a non-capital case. The petitioner has not shown a violation of his constitutional rights because, the Court believes, the record suggests that he had fair notice of the information the sentencing court considered at the hearing. The petitioner does not claim that the information relied upon by the court to reach this conclusion was materially false. He is not entitled to habeas corpus relief with respect to this claim.

Third, the petitioner claims that the trial court erred in characterizing the petitioner as a "social psychopath" who was likely to kill, without any medical basis for that characterization, and improperly based the sentence on this unsupported conclusion. If a court is to fashion a punishment to "fit the offender and not merely the crime," the court must be permitted to consider the nature of the offender. *See Williams*, 337 U.S. at 247. The court's statement did not represent a diagnosis, but a belief on the part of the court that the petitioner had a violent character and was not likely to be rehabilitated. The trial court made a determination as to the petitioner's criminal propensities based upon a variety of factors, including his past criminal history and the nature of the offense. The

petitioner has not shown any of the information relied upon by the trial court to be materially false. Therefore, he has not established a constitutional violation.

B.

Next, the petitioner argues that he is entitled to habeas corpus relief because his sentence was disproportionate and based upon incorrectly scored sentencing guidelines. The respondent contends that these claims are procedurally defaulted because the petitioner failed to present them to the Michigan Supreme Court in his application for leave to appeal. In that application, the petitioner requested that the Michigan Supreme Court consider all of the issues raised before the Michigan Court of Appeals, including these two sentencing claims. Thus, the respondent's argument that the petitioner failed to present these claims to the Michigan Supreme Court is contradicted directly by the record before the Court. The Court concludes that the petitioner exhausted these claims by presenting them in his applications for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eighth Amendment grounds faces a formidable challenge. Generally, he may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Ibid.* Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts

should consider in making that determination. *Ibid.* The Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id*. at 73.

In *Lockyer*, the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm*, 463 U.S. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel*, where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer*, 538 U.S. at 72-77.

In this case, however, the Court conducts its independent review of the issue absent the restrictions that the "contrary to or unreasonable application" standard may impose. *See Clinkscale*, 375 F.3d at 436. Nevertheless, it is still difficult to show that a lengthy prison sentence violates the Eighth Amendment.

A plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *See Harmelin*, 501 U.S. at 965. As the Supreme Court observed in *Lockyer*, it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id*. at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001) (citing *Coker v. Georgia*, 433 U.S. 584, 592 (1977)); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272. Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment. In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court recently reaffirmed *Rummel* and found constitutional a sentence of

twenty-five years to life imposed upon a fifth felony conviction. *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).

In this case, the Court does not believe that the petitioner's sentence of twenty to forty years for conspiracy to commit armed robbery violated the Eighth Amendment. The petitioner was on probation for another conviction at the time of his arrest. He told police that one of the group was going to kill the victim by suffocating or stabbing him. The sentencing court concluded that the petitioner was dangerously violent and ought to be isolated from society for its protection. The sentencing court's justification for the lengthy prison term was rational in light of the record in this case.

Michigan law allowed a prison term of life or any number of years for this offense. Mich. Comp. Laws §750.529. The challenged sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (citation omitted) (quoted with approval in *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin*, 213 F.3d at 301 (quoting *Williams*, 337 U.S. at 245). There is no Eighth Amendment violation here.

The petitioner's claim that the trial court incorrectly calculated the sentencing guidelines does not entitle him to habeas corpus relief. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The petitioner's argument that the state court erred in scoring

his sentencing guidelines is based solely on state law. Consequently, these claims are not cognizable on federal habeas corpus review.

### III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: January 31, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 31, 2006.

s/Tracy A. Jacobs<br>
TRACY A. JACOBS